WaRdlaw', Oh.
I concur in the judgment of the Court in this case, on the ground, that the instrument executed by Sarah Connor was revocable, and in fact revoked.
It is settled in this State, by the decision of the Court of last resort, that personal estate may be conveyed by deed, even without the intervention of trustees, after a life estate reserved by the grantor, if, upon construction of the whole instrument, the intention be manifested to transfer the title presently and irrevocably, and to postpone nothing but the enjoyment. In the question whether a particular instrument is a deed or a testament, the postponement of the enjoyment of the estate by the donee until the death of the donor, is a fact no longer conclusive, but still leading to the conclusion, that the instrument is testamentary. The force of this fact by itself, may be now overcome by the context and general frame of the instrument.
The instrument has the frame of a testament, rather than of a deed. It is divided into separate clauses, by the first four of which, distinct articles of property are given to different donees, and by the fifth and last, trustees are appointed for its execution. It has the number of witnesses indispensable in a testament, but unnecessary and unusual in a deed.. It contains no internal evidence of delivery; a fact necessary to the existence of a deed, not of a testament. It describes some of the subjects of gift in such general terms, as might serve to pass one of the class in a testament, but not to give present title to specific articles, as ‘ one feather bed,’ &c.; several of the class being owned by the donor. Above all, the instrument expressly declares the intention of the donor, “ that the above property does not vest in any of the parties until my death.” The terms property and *459 vest, refer more directly to title than to enjoyment, and in their connexion here, imply strongly, that the donor did not mean to part with any right beyond recall; and the implication acquires increased vigor from the use of the present tense, ‘ does not vest,’ which would not be naturally employed in reference to the future event of enjoyment.
The subjects of disposition in all the clauses of this instrument, except the first, are more appropriately and more commonly given by testament than by deed. One might give by deed a remainder in ‘ wearing apparel,’ after a use for life, and then the donee would be required to distinguish the specific articles given, from others of the same kind subsequently acquired by the tenant for life ; but it is much more reasonable to conclude, that the donor in such case intends to pass all property of this description, with all its changes and accumulations, as it may exist at his death; and this can be effected by a testament, which speaks at the death of the donor.
Against all these circumstances nothing is opposed, except the equivocal fact, that the donor denominates the instrument a deed. She may have done this ignorantly, or because it was her act, or because it had a seal; and seals are commonly, yet unnecessarily, used in testaments.
If it be decided that this instrument is testamentary,'the bill must be dismissed. It is only on the concession that it is a deed, that the question of delivery can arise, or the questions as to loss, and as to the operation of the terms of gift, become impor-: tant.
Considering the instrument a deed, I conclude there was sufficient evidence of delivery. From the possession of the instrument by the person to whom the delivery should be made, and the custody committed, delivery should be presumed, in the absence of any countervailing evidence.
I think there was prima, facie proof of loss. Our cases de-. termine, contrary to the practice of some of the States, that the witnesses to prove loss, as preliminary to secondary evidence of the contents of an instrument, must he disinterested ; and the *460 declaration of E. B. Wheeler, a plaintiff, that he had lost this paper, was manifestly incompetent. But search in the place where a missing paper ought to be kept, although this place may be among the papers of a party, is not the declaration of the party. It is a substantive and material fact. Such search, if made with diligence and in good faith and without success, is sufficient ground for the presumption of loss. (Drake vs. Ramey, Rhodes & Co., 3 Rich. 39; 1 Greenl. Ev. § 558 ; 1 Stark. Ev. 349.) From the nature of the fact it can seldom be proved positively, or otherwise than by circumstantial evidence. Where the search has been slight or collusive, or where there is reason to suspect the suppression of the original, to gain some advantage from the resort to secondary evidence of contents, the presumption of loss should not be made. Nothing of this sort is imputed here. Moreover, conclusive proof of the existence and contents of the paper is offered; and the party who seeks to establish the loss, has no interest in the property in controversy. More ample proof of loss than was given in this case, is not practicable, except in rare instances, where witnesses of the destruction of the instrument can be produced.
I express no fixed opinion as to the effect of the terms of donation, under which this claim is set up. “All my interest in the estate of” a living person, may include all my claims, by lien or otherwise, on his property; and a gift of a “ bond, secured by a mortgage of nine negroes,” may not only transfer the debt, but assign the mortgage. The mortgagee at law, after condition broken, is the owner of the chattels mortgaged. Wolfe vs. O’Farrell, (1 Tread. 151.) Even before condition broken, he may maintain trover against any person except the mortgagor. Spriggs vs. Camp, (2 Spears, 181.) In this court, as between mortgagor and mortgagee, the mortgage is regarded merely as security for the debt. Bryan vs. Robert, (1 Strob. Eq. 334.) But as between mortgagee and his assignee, if the former take the chattels in satisfaction of the debt, and retain possession of them by his agent, as in this case, I am not clear that the assignee may not elect to proceed for the chattels themselves. *461 In such proceeding, the mortgagee or his representative ought to be a party, as materially interested in the object of the suit; but here no objection was made by the pleadings to the want of proper parties.
Dunkin, Oh., concurred.
Dargan, Oh.
In this case I concur in the affirmation of the decree, and feel disposed to express the grounds of my concurrence.
I think the evidence to prove the loss of the deed, was insufficient for that purpose. Oliver P. Wheeler, (the son of the complainant, Edward B. Wheeler,) proves that he was called upon by his father to assist him in a search for the instrument among his papers. He complied with the request, and the search was made. The instrument was not found, and E. B. Wheeler said it was lost. This was only a day or two before the trial, and was evidently a preliminary formula for the introduction of the secondary testimony. The first thing that strikes the mind as unsatisfactory in this testimony, particularly in the instance of a person having so many papers and documents in his possession as this complainant, is the probability that the paper was misplaced and not lost. And that is not the kind of loss, I apprehend, which renders proof of the contents admissible.
But it is obvious, that the whole proof of the loss rests entirely upon Edward B. Wheeler’s declaration to that effect. How did the witness, (O. B. Wheeler,) know, but that, at the very time of his making the search, the other did not have the paper in his pocket, or in some other secret place of deposite, to which his attention was not invited ? I make this suggestion, not suspecting in the slightest degree, that such was the fact in this case ; but merely for the purpose of illustrating a general principle. Such chicanery might be resorted to in any case, in which the party was unwilling, or deemed it unsafe, to exhibit the original. To admit such testimony, would be the merest evasion of the rule, which prohibits a party from being a witness in his own cause. It would be better far, to admit his declara *462 tion by affidavit, or his examination in Court, with the right of cross examination, than to admit his statement out of Court to a third party, unsupported by oath, and unsifted by cross examination.
I admit the great difficulty of proving the loss of a paper in many cases ; and that the argument for relaxing the stringency of the proof in such cases is very strong. But to this argument it may be replied, that the stringency of the proof in such cases is greatly relaxed, and that very slight evidence of the loss, after satisfactory proof of the existence of an instrument, is sufficient. But that is not the point here. The question is simply, whether the declarations of the party to a third person, accompanied by a search which may be a mere sham, shall be admissible. There may be evils and inconveniences growing out of the rule as I understand it to have been settled by the practice of the Courts. But on the other hand, the mischiefs which would result from allowing a party to manufacture his own evidence, and to promulge it to the Court, through a witness examined on the stand, and to be used as his mouth-piece, are infinitely greater. After all, when a party fails, for the want of the very slight proof necessary to establish the loss of a paper, he but falls into a category with the numerous class of innocent and unfortunate persons, who have just rights, but lack the necessary proof to sustain them in Court.
On the fourth ground of. appeal, I concur with the Chancellor in the views which he has expressed in his circuit decree. If the instrument upon which' the complainants rest their claim, were to be construed as having the operation of a deed, it could only be considered as an assignment, (after a life estate in the donor,) of the debt due to the donor by Joseph Livingston ; or rather of the fund secured by the bond and mortgage executed to her by Livingston. She could not have intended to debar herself from the collection and use of the money in her life time. The mortgage was only an incident of the debt, auxiliary but not necessary to its enforcement. The property of Joseph Livingston was afterwards sold, under a decree of the Court of *463 Equity, with the view of marshalling the assets. The negroes mortgaged to Mrs. Connor were sold at this sale, hut not under a decree of foreclosure ; and Mrs. Connor became the purchaser. In marshalling the assets, the proceeds of the sale of the mortgaged negroes were allowed her on account of her prior and special lien. Mrs. Connor is dead, and the negroes have passed into the possession of third persons, against whom the complainants have instituted this suit. I agree with the Chancellor, that if the complainants have any claim, it is against the' personal representatives of Mrs. Connor, (who are not parties,) for so much money as was due on the bond of Livingston at the time of its supposed assignment.
The most difficult part of this case, is the construction of the instrument of the 7th October, 1843. Is it a testament or a deed ? And first, was it delivered ? E. JB. Wheeler, who was one of the trustees nominated by the instrument, was in possession of it, and had it recorded. This I think, according to the decisions, amounted to prima facie evidence of its delivery. But is it a testament or a deed ? When by the terms of an instrument, duly executed and delivered, it appears that the party who executes it, intends to transfer a present irrevocable right in a chattel to be vested in possession at a future time, (a present right to a future enjoyment,) our Courts will give legal efficacy to such intention. This principle is now too solemnly adjudged to be brought into question. But the question here is, whether the instrument executed by Mrs. Connor comes within the foregoing definition. This is a point which, in my judgment, is not of easy solution. The instrument is .Tanus-faced. It has two aspects. When I look at it in cne aspect, it seems to be a deed. When I regard it in another point of view, it looks like a will. And it cannot be both.
When an instrument is propounded as a will, there are three modes or kinds of proof, by which its testamentary character may be tested. One of these is to look to the declared intention of the party executing it, as expressed upon the face of the paper. By another mode or test, we may hear the parol declar *464 ations of the supposed testator, whether it was his purpose to make a will. The parol declarations must he a part of the res gestee, and of course must be satisfactorily proved. Under this class, there may, and have been, cases, in which an instrument, in the form of a penal bond, or a simple promissory note, executed according to the forms prescribed by law, have been propounded and established as testamentary papers. And again, we may look to the nature of the dispositions of the property, which the instrument affects to make, to ascertain whether the party executing it, intended to convey irrevocably a present right or estate. In this case, there are no parol declarations or attendant circumstances, to throw any light upon the question. When we look at the language of the paper, we discover that Mrs. Connor herself calls it a deed. It professes upon its face to be a deed. This is a strong point in favor of the appellants. It is the strongest, and in fact the only strong point in their favor. It is difficult to get over it. When looked at in this aspect, the paper appears to be a deed. But upon a further analysis, there are cogent reasons for doubting whether Mrs. Conner did not use the term “ deed ” in a loose sense, and without regard to its precise and technical signification. She has no where expressly or impliedly declared a purpose to convey a present right or estate, except so far as such purpose may be implied from her calling the instrument a “ deed.” On the contrary, she declares it to be the full understanding, that the property was not to vest in the donees until after her death. If we look to the subject matter of one of the donations, the doubt is increased. She gives to one of her daughters her wearing apparel. This looks as if she was making a will. These were articles consumable in their use. Did she intend to lay aside the wearing apparel which she then had on hand, to await the remainder which she had created therein, after the termination of the life estate which she had reserved to herself? Or did she intend to use them, and wear them out, if need be, and leave to her daughter such of her wearing apparel as she had on hand at her .death, whether they were of the old stock, or subsequently ac *465 quired?' Subsequently acquired apparel would have passed under a will, but could not have passed under a deed.
Such are the various and conflicting aspects which this paper wears. I have been myself unable to arrive at any conclusion, satisfactory to my own judgment, as to the true construction of this most equivocal instrument. My mind as to this question is in a state of equipoise. The appeal, so far as my individual judgment is concerned, may be decided by my concurrence in the decree on the other grounds, as already indicated. If forced to decide this question of construction, I should resolve my doubts, by adjudging against the complainants as actors in the case, and in that character bound to establish the affirmative proposition on which their alleged rights depend.

Appeal dismissed.